Filed 7/16/25  P. v. Thomas CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KELSEY AUGUSTA THOMAS,<br><br>    Defendant and Appellant. | B336886<br><br>Los Angeles County<br>Super. Ct. No. A637193 |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Kelsey Augusta Thomas appeals the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  Thomas argues the trial court erred by denying his resentencing petition at the prima facie stage after concluding the record of conviction demonstrates he is ineligible for relief as a matter of law.  We reject Thomas's contention.  The jury instructions, read in conjunction with the prosecution's closing argument, demonstrate as a matter of law that Thomas was prosecuted and convicted as the actual killer in the charged homicide.  We therefore affirm the trial court's order denying him relief.

## FACTUAL BACKGROUND

On direct appeal, the Court of Appeal set forth the following statement of facts:[2]

> [Thomas's] former girlfriend, Beronica McFarland, testified she had worked for [Thomas] as a prostitute, soliciting customers on the corner of Figueroa Street and 104th Place.  Approximately 11 p.m. on June 2, 1986, [Thomas] and McFarland went to this location and McFarland stood on the

---

1      All undesignated statutory references are to the Penal Code.

2      We rely on this information as background only.  We base our assessment as to whether Thomas is entitled to relief under section 1172.6 on our independent review of the record of conviction.  (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2.)

northwest corner near a bus stop while [Thomas] watched her from the southwest corner.

Earlier that night, [Thomas] had told McFarland he needed money and planned to rob someone but did not say who. McFarland testified she knew [Thomas] "was going to do it because that's just the way he is."

When McFarland attracted her first customer, they agreed on a price and, as was her practice, McFarland told him to park his automobile down the street. McFarland entered the vehicle, received $25, and began having sex with her customer. While she did so, [Thomas] walked within two feet of the vehicle, proceeded halfway up the block, again walked past the vehicle and returned to the southwest corner, which was McFarland's signal to finish. McFarland finished and returned to the northwest corner.

McFarland's next customer was the victim, David Anderson. Anderson and McFarland had a brief conversation through the open passenger-side window of Anderson's white Camaro, during which Anderson said he wanted a "date" and displayed a "wad of money" two or three inches thick. McFarland directed him to park his vehicle down the street.

McFarland entered the automobile; Anderson gave her $25, and they began having sex. Within two or three minutes, [Thomas] approached, displayed a gun, and told the victim "he had a .357 and it was a robbery." [Thomas] ordered Anderson out of the vehicle, reached into the victim's pocket and removed his money, and then directed Anderson to walk toward the corner. As Anderson was walking,

[Thomas] shot him three times. McFarland had not known [Thomas] was going to rob Anderson.

[Thomas] told McFarland to enter the driver's seat of the Camaro and start the vehicle. McFarland complied, although she did not know how to drive. When [Thomas] ordered McFarland to "drive," she told him she did not want to. [Thomas] repeated his command to drive, and McFarland complied, receiving assistance from [Thomas] in placing the automobile in gear and negotiating turns.

As [Thomas] and McFarland left the scene of the shooting, they were followed by a Cadillac. The Cadillac continued to follow as McFarland and [Thomas] made numerous turns and ceased only when [Thomas] began shooting at the vehicle.

McFarland asked [Thomas] why he shot the victim, and [Thomas] replied he wanted no witnesses.

[Thomas] and McFarland parked the Camaro a few blocks from the motel where they were staying. Using a napkin, [Thomas] attempted to wipe any fingerprints off the vehicle, and they walked to the motel. [Thomas] told McFarland to pack their belongings while [Thomas] telephoned his sister, Marie. Marie arrived and took [Thomas] and McFarland back to Marie's apartment, where [Thomas] counted the money he had taken from the victim.

Approximately two weeks later, McFarland contacted the police.

Sheila Rasco, Anderson's girlfriend, testified that on June 2, 1986, Anderson borrowed her white Camaro. He had with him a roll of money approximately two inches across, which he had

obtained by selling drugs. Rasco recovered her automobile from the police following Anderson's death.

Approximately 2 a.m. on June 3, 1986, police found Anderson lying on the sidewalk near the corner of Figueroa Street and 104th Place. No money was found on Anderson's body or in the area. Anderson died of a gunshot wound to the head and had suffered a second wound in the thigh, both of which had been inflicted either by a .38 caliber or .357 caliber firearm. One bullet was recovered from Anderson's body, a second was found in Anderson's clothes, and bullet holes were found in a residence at the scene of the shooting.

Rasco's white Camaro was found near the intersection of Raymond Street and 73rd Street. With the exception of $10, the vehicle contained no money.

Pei Cho Tung, the manager of a motel located on Vermont Avenue near 74th Street, testified [Thomas] and McFarland had lived at the motel from May 10, 1986, until sometime in June 1986.

## PROCEDURAL BACKGROUND

In 1988, a jury convicted Thomas of first degree murder (§ 187), robbery (§ 211), and found true the special circumstance that Thomas committed the murder during the commission of a robbery (§ 190.2, subd. (a)(17)(A)). The jury also found true allegations that Thomas used a firearm in the commission of the murder and robbery. (§ 12022.5.) The trial court sentenced Thomas to life without the possibility of parole for the special circumstance murder, enhanced by two years for personal use of

5

a firearm, and stayed sentencing on the robbery.  A different panel of this court affirmed the judgment on direct appeal. (*People v. Thomas* (Dec. 18, 1989, B035981) [nonpub. opn.].)

In 2023, Thomas filed pro per a section 1172.6 petition for resentencing on his murder conviction, and the trial court appointed counsel to represent him.  The prosecution filed a response, along with the jury instructions from Thomas's trial.  In its response, the prosecution argued the instructions demonstrated Thomas was prosecuted and convicted of murder as the actual killer of Anderson.  As such, he was ineligible for section 1172.6 relief as a matter of law.  In reply, Thomas argued any conclusion that he was ineligible for relief as the actual killer would require judicial factfinding, impermissible at the prima facie stage.

In February 2024, the trial court held Thomas had not shown prima facie eligibility for relief and therefore denied his petition.  The court noted that the jury was instructed on felony murder, not on a theory of liability that required a finding of malice.  But the jury instructions did not instruct on aiding and abetting liability and demonstrated as a matter of law that Thomas was convicted of felony murder as the actual killer.  That is, the only viable path to conviction under the law as instructed required the jury to find Thomas was Anderson's actual killer.  Thomas timely appealed.

## STATUTORY FRAMEWORK

In 2018, the Legislature, through Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), amended section 188 to eliminate the natural and probable consequences doctrine as a basis for murder liability.  Subject to certain exceptions under the felony murder rule, section 188, subdivision (a)(3) now requires

6

that a defendant act with malice to be convicted of murder.[3] Senate Bill No. 1437 also amended section 189 to narrow the scope of the felony murder rule.  As amended, section 189, subdivision (e) now permits, in relevant part, a felony murder conviction based on the commission of an enumerated felony in which a death occurs if one of the following is proven:

> (1) The person was the actual killer.

> (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

> (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.

In addition, Senate Bill No. 1437 added section 1172.6, "which provides a procedure for defendants convicted of murder to seek resentencing if they are able to establish they could not be convicted of murder under the amendments to section 188 and 189 effective January 1, 2019."  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1250 [citing Stats. 2018, ch. 1015, §. 4].)

Under section 1172.6, a defendant convicted of felony murder may file a petition to vacate the conviction and be resentenced on any remaining counts.  To set forth a prima

---

3      In 2021, through Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551), the Legislature clarified that the amendments made by Senate Bill No. 1437 were also intended to apply to attempted murder and manslaughter.  (*People v. Hin* (2025) 17 Cal.5th 401, 441.)

facie case for relief, the defendant must show: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under [an imputed-malice theory of murder liability] . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . at which the petitioner could have been convicted of murder . . . . [and ¶] (3) The petitioner could not presently be convicted of murder . . . [under current law]."  (§ 1172.6, subds. (a).)

Once a facially sufficient petition attesting to the above criteria is filed, the trial court must determine whether the petitioner is prima facie eligible for relief.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)  If the trial court determines that the petitioner is so eligible, it must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subd. (c).)  At that hearing, the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under current law.  (§ 1172.6, subd. (d)(3).)

## DISCUSSION

We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage.  (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).)  In conducting this review, we review the record of conviction as a whole.  (See *Lewis*, *supra*, 11 Cal.5th at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)  Applying this standard, we conclude the trial court did not err in finding Thomas's record of conviction demonstrates he is ineligible as a matter of law for section 1172.6 relief.

Here, the record of conviction, viewed as a whole, demonstrates as a matter of law that Thomas was prosecuted and convicted of murder under the theory that he was the actual killer. At trial, the court instructed the jury on felony murder doctrine as a basis for finding murder liability but did not instruct on aiding and abetting liability. Moreover, the prosecution's closing argument makes clear that the only theory of liability presented to the jury to consider was that Thomas was guilty of felony murder as the actual killer of Anderson during a robbery. Specifically, during closing argument, the prosecution stated: "If you are committing a felony and you kill somebody while you are committing that felony, you are guilty of first degree murder. And it does not matter if that killing is intentional, unintentional, purely accidental, whatever." The prosecution then stated Thomas personally used a firearm while committing the murder. In support of this theory, the prosecution pointed to evidence adduced at trial indicating Thomas shot the victim.

The jury instructions, viewed in conjunction with the prosecution's closing argument, demonstrate as a matter of law that Thomas was convicted of felony murder under the theory that he was the actual killer. (§ 189, subd. (e)(1).) As set forth above, this theory of liability remains valid under sections 188 and 189, as amended. (§ 189, subd. (e).) Thus, the trial court did not err in concluding the record of conviction demonstrates as a matter of law that Thomas is ineligible for section 1172.6 relief. (See *People v. Vang* (2022) 82 Cal.App.5th 64, 88-90 [imposing death penalty on defendant convicted of felony murder as actual killer does not violate the Eighth Amendment limits on executing felony murderers].)

In so concluding, we find unpersuasive Thomas's argument that on appeal we are unable to consider the content of the prosecution's closing argument. Closing arguments are, of course, part of the record of conviction in section 1172.6 proceedings. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13.) Courts therefore may rely on them, as we do here, in assessing whether a petitioner is prima facie ineligible for section 1172.6 relief.

Finally, Thomas's reliance on *People v. Lee* (2023) 95 Cal.App.5th 1164 (*Lee*) in urging he has made a prima facie case for resentencing eligibility notwithstanding the prosecution's closing argument is misplaced. In *Lee*, Division One of our court held that a defendant's murder conviction under the provocative act doctrine did not render him ineligible for resentencing under section 1172.6 as a matter of law. There, Lee was tried, and the jury instructed, on murder based "solely on the malicious provocative acts of his confederates in the underlying robbery, without any finding as to [his] mental state." (*Lee* at pp. 1169, 1188.) In closing, the prosecution argued Lee was guilty of murder based on his own commission of a provocative act, a theory of liability that remains valid under sections 188 and 189. (*Lee* at p. 1188.) The court concluded that, despite the legal validity of the prosecution's closing argument, the jury instructions permitted the jury to convict Lee of murder under a now-invalid, imputed-malice theory. (*Ibid.*) Thus, the record before the court did not demonstrate ineligibility for section 1172.6 relief as a matter of law. (*Lee* at p. 1188.) The court therefore remanded the case for the trial court to issue an order to show cause and hold an evidentiary hearing (unless waived) under section 1172.6, subdivisions (d)(1) and (3).

*Lee* is inapposite to this case. Notwithstanding the prosecution's argument in closing, the instructions in *Lee* allowed the jury to impute malice to a confederate and, based on that imputation, convict Lee of murder. Here, by contrast, the jury instructions contain no aiding and abetting instructions, and in no way suggest there were any individuals other than Thomas, acting alone, involved in the commission of the charged murder. Nor did the prosecution's closing argument suggest Thomas acted with any confederates. Rather, consistent with the jury instructions, the prosecution's sole theory of murder liability in closing was that Thomas was the sole and actual killer.[4]

---

4      In their briefs, the parties raise arguments concerning the applicability of *Harden*, *supra*, 81 Cal.App.5th 45 and whether that case was correctly decided. Because we resolve this appeal narrowly based only on our review of Thomas's record of conviction, we need not address whether the legal principles articulated in *Harden* apply here.

11

## DISPOSITION

We affirm the trial court's order denying Thomas section 1172.6 relief.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

GARCIA UHRIG, J.*

We concur:

ZUKIN, P. J.

MORI, J.

---

\* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.